UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | Criminal Action No. 6: 04-063-DCR |
| V. | ) ) ) | |
| GILBERT DARREN SIMPSON, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

A jury convicted Defendant Gilbert Simpson of conspiring to distribute more than 100 kilograms of marijuana, distributing less than 250 grams of marijuana, and possessing Oxycontin with the intent to distribute it. He was sentenced to 360 months' imprisonment on August 22, 2005. Simpson has now filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), citing changes in family and medical circumstances. [Record No. 146] He also claims he is eligible for relief under Amendment 821 to the United States Sentencing Guidelines. *Id*.

**I.**

Simpson is a 57-years-old, incarcerated at the Federal Correctional Facility in Beckley, West Virginia. Based on multiple felony convictions, Simpson was designated as a career offender at the time of his sentencing hearing, with a Total Offense Level 37 and Criminal History Category VI. As a result, his guidelines range for incarceration was 360 months to life.

Simpson unsuccessfully appealed his conviction and the Supreme Court denied his petition for a writ of certiorari. [Record Nos. 98, 99, 101] Simpson then filed an unsuccessful motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [Record No. 121] This Court later denied Simpson's request for reconsideration of that decision. [Record No. 126]

On August 5, 2013, Simpson challenged his status as a career offender in a successive § 2255 motion. [Record No. 131] However, the Sixth Circuit denied Simpson request to file that motion. [Record No. 133] Then, on April 16, 2016, this Court denied Simpson's second motion for a reduced sentence under 18 U.S.C. § 3582(c)(2) and amendments to the United States Sentencing Guidelines. [Record No. 134] Next, Simpson sought compassionate release on February 18, 2020, citing the need to care for his mentally challenged son. However, the Court denied that request because Simpson failed to show an extraordinary and compelling reason that warranted a sentence reduction. [Record No. 144] As of this date, Simpson has been incarcerated for 19 years.[1]

Simpson recently filed a second motion for compassionate release, claiming again that his mentally challenged son needs him as a caregiver and citing to his own deteriorating health conditions. [Record No. 146] Simpson's 35 year-old son is autistic and suffering from depression following the death of his previous caregiver (Simpson's mother) on October 26, 2023. Without Simpson's mother to care for his mentally challenged son, Simpson asserts that his sister now "comes around about once a week" to provide groceries and transportation to

---

[1]  *See* Find an Inmate, BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited February 26, 2024).

appointments. Because Simpson's son is unable to care for himself without assistance, Simpson believes he qualifies for compassionate release under § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13. Likewise, Simpson argues that he is eligible for a reduced sentence because of chronic pain in his back and shoulder.

The United States objects to Simpson's motion. The government argues that Simpson is not entitled to a reduced sentence because he is not the only potential caregiver for his disabled son and it contends that Simpson's non-life threatening physical ailments can be properly treated within the Bureau of Prisons.

## II.

This Court conducts a three-step analysis when considering § 3582(c)(1)(A) motions. *See United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020). After fully exhausting all administrative remedies, a prisoner seeking compassionate release must show an "extraordinary and compelling reason" to warrant a sentence reduction.[2] *Id*. Next, the Court determines whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. at 1108. And third, the Court analyzes the factors set forth in 18 U.S.C. § 3553(a) to determine whether any reduction authorized by the statute is "warranted

---

[2] Congress originally tasked the Sentencing Commission with determining "what should be considered extraordinary and compelling reasons for sentence reduction," limiting its discretion only with the qualification that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See* 28 U.S.C. § 994(t). Consistent with this directive, the Commission previously identified four circumstances it viewed as extraordinary and compelling reasons for a sentence modification: (1) the medical condition of the defendant; (2) the age of the defendant; (3) "family circumstances," such as when a defendant is the sole caregiver to a spouse or minor child; and (4) "other reasons," as determined by the BOP. *See* U.S.S.G. § 1B1.13. Recently, the Commission provided additional guidance regarding circumstances constituting extraordinary and compelling reasons warranting relief.

in whole or in part under the particular circumstances of the case." *Id*. at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Courts are generally without authority to "modify a term of imprisonment once it has been imposed," but there has long been an exception for cases where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(2)(A)(i). Prior to enactment of the First Step Act of 2018, only the United States Bureau of Prisons ("BOP") could request compassionate release on a defendant's behalf. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (citing § 3582(c)(1)(A) (2002)). However, the First Step Act eliminated this gatekeeping role and allowed prisoners to move for relief when the BOP declined to act. *Id*.

### III.

Simpson appears to have cleared the first hurdle by exhausting his administrative remedies. His primary claim for release focuses on his mentally challenged adult son who has struggled to adapt following the death of his caregiver. Simpson argues that his sentence should be reduced so he can "help [his son] manage his life, go to the store, [and] care for him." [Record No. 146] The United States Sentencing Guidelines provides that courts may consider "[t]he death or incapacitation of the caregiver of the . . . defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition" as an extraordinary and compelling meriting a reduced sentence. *See* U.S.S.G. §1B1.13(b)(3)(A). However, the death of a disabled adult child's caregiver may be considered as extraordinary and compelling "when the defendant would be the only available caregiver." *See* U.S.S.G. §1B1.13(b)(3)(D).

Simpson acknowledged that his sister has assumed a partial caregiving role by providing his son with living essentials on a weekly basis. It also appears that Simpson's son, who is presumably living alone, can sufficiently care for himself between visits from Simpson's sister. As a result, Simpson's family circumstances do not warrant a sentence reduction.

Next, Simpson claims that medical circumstances qualify him for a reduced sentence. Specifically, he cites his chronic left shoulder dislocation and a bulging disk in his back as the primary circumstances contributing to his deteriorating physical condition. The United States requested Simpson's medical records from the BOP and they confirm he has been treated for various health issues.[3] However, these records also reveal that Simpson's correctional facility has provided adequate medical treatment, including neurological evaluations, spinal injections, physical therapy, and consultations with a pain management specialist. In addition, a consultation report with a doctor of osteopathic medicine reveals that there is "no acute intervention" possible aside from pain management "to reconstruct the shoulder since [it] has been out for so many years."[4] [Record No. 152-2] Doctors have determined a similar situation exists with his back issues.

Although Simpson argues that BOP officials have not provided the requested surgical resolution, records indicate that two "surgical providers" have determined that he is "not a

---

[3] Simpson has also been treated for hypertension, high cholesterol, and kidney issues. He has been prescribed a variety of medications to address these issues, including medicine for pain management.

[4] Simpson's shoulder has been dislocated since before he was sentenced in 2005. The Presentence Investigation Report prepared by the United States Probation Office implied that Simpson may have become polysubstance dependent as a result of his shoulder dislocation and the subsequent pain he experienced. [PSR ¶ 54]

good candidate for surgical treatment." [Record No. 148] Rather than provide back surgery, Simpson's doctors have attempted to assist with pain management. *Id*.

Within the Sixth Circuit, compassionate release has been historically justified by an inmate's poor physical condition if the defendant suffers from "unusual circumstances which could not have been reasonably foreseen by the court at the time of sentencing" or "if an inmate becomes severely ill" from a terminal condition. *See McCall*, 56 F.4th at 1059. Simpson's medical records neither reference a diagnosis of a terminal illness nor is he suffering from a serious physical condition that BOP cannot effectively treat or manage. *Id*.

The undersigned notes, however, that the Sentencing Commission recently adopted a policy statement expanding the medical circumstances that may warrant compassionate release in recognition of conditions that require long-term care. *See* U.S.S.G. Amend. 814, eff. Nov. 1, 2023. It provides, in relevant part, that extraordinary and compelling reasons may exist to reduce a defendant's sentence if the defendant is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[5] *See* U.S.S.G. 1B1.13(b)(1)(B)(iii).

Simpson finds little support in this policy statement, even though he is experiencing worsening physical conditions as a result of the natural aging process. But Simpson is not suffering from a terminal condition from which is unexpected to recover. And he has not demonstrated that any condition from which he suffers is beyond the facility's capacity to

---

[5] United States Sent. Comm'n, *2023 Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

provide proper treatment. Although his shoulder and back issues likely impact his conditions of daily living, they do not prevent him from independently providing self-care as an inmate. The undersigned concludes that Simpson does not suffer from the type of deteriorating physical condition that either the Sixth Circuit or the Sentencing Commission contemplates as an extraordinary and compelling to warrant compassionate release.

Finally, Simpson argues that his participation in rehabilitative programs and his good behavior while incarcerated justify a reduced sentence. He specifically emphasizes that he has maintained good conduct as an inmate which has allowed him the opportunity to "work a job outside of the camp." [Record No. 146] He concedes, however, that a defendant's post-conviction rehabilitation alone does not necessarily render him eligible for compassionate release. *See McCall*, 2022 WL 17843865, at *11 ("[R]ehabilitation . . . cannot by itself justify a sentence reduction."); *see also United States v. Ruffin*, 978 F.3d 1000, 1009 (6th Cir. 2020).

While Simpson's rehabilitative efforts are commendable, they do not amount to an extraordinarily and compelling circumstance. This determination holds even when weighed in combination with other considerations, such as Simpson's claim that he is serving an unusually long sentence.[6] Simpson met the designation as a career offender at sentencing, and he would still meet those requirements if sentenced today.[7] Nonetheless, the Court notes that

---

[6] Pursuant to U.S.S.C. 1B1.13(b)(6), courts may now consider an unusually long sentence as a potential extraordinary and compelling reason to justify a sentence reduction. However, Simpson sentence was enhanced because he qualified as a career offender. This leaves little room for a "gross disparity" between the penalty he received and the one he would receive today.

[7] The offense Simpson committed involved drug trafficking, he was over the age of 18 at the time he committed his offense, and he had prior felony convictions, including convictions for trafficking Xanax and second degree assault in Knox County Circuit Court. [Record No. 148]

even though Simpson's good behavior does not rise to the level of extraordinary and compelling, he ultimately will benefit by the "good time" credits he has earned.

Even if Simpson had presented an extraordinary and compelling reason justifying a sentence reduction, granting his motion would be inconsistent with statutory sentencing factors. Under 18 U.S.C. § 3553(a)(1)-(2), courts consider, inter alia:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The government argues -- and the Court agrees -- that Simpson's sentence underrepresents his criminal history. Before committing the offenses for which he is presently serving time, Simpson was convicted for arson, trafficking controlled substances, public intoxication under the influence of pills, and operating a motor vehicle under the influence of alcohol. He was also convicted of second degree assault after shooting his father following a domestic dispute while under the influence of Lorcet, an opioid pharmaceutical drug. According to his Presentence Investigation Report, Simpson has struggled with substance abuse since age 13. [PSR ¶ 54] During his lifetime, he has reported abusing marijuana, cocaine, methamphetamine and multiple high-powered and addictive pharmaceutical drugs, including Xanax, Valium, and OxyContin. *Id*.

As noted, Simpson was convicted as a career offender, which enhanced his sentence based on his repeated criminal conduct involving controlled substances. Any reduction of his sentence would undermine the need for specific deterrence and unduly depreciate the seriousness of his offenses. The undersigned concludes that his original sentence is sufficient but not greater than necessary to achieve the objectives contemplated by § 3553(a).

## IV.

Simpson also raises the prospect of relief from the United States Sentencing Commission's recent amendment that reduces "recency points" for certain criminal defendants who committed their offense while serving a criminal justice sentence.[8] Amendment 821 to the United States Sentencing Guidelines (Part A) retroactively reduces "recency points" for defendants with more than six criminal history points at the time of sentencing. (U.S.S.G. Amend. 821, eff. Nov. 1, 2023). Simpson was convicted while on parole and had ten criminal history points at sentencing. However, he was sentenced as a career offender pursuant to U.S.S.G. § 4B1.1. Even if Part A is applied, thus reducing his criminal history score, Simpson's status as a career offender still places him in Criminal History Category IV. *See* U.S.S.G. § 4B1.1(b). Amendment 821 would not have the effect of lowering Simpson's guidelines range.

## V.

Being sufficiently advised, it is hereby

---

[8] Although Simpson did not claim he is eligible for a reduced sentence under Amendment 821 in his motion for compassionate release, he discussed the amendment in his reply to the government's response in opposition to his motion.

**ORDERED** that Defendant Simpson's motion for a sentence reduction [Record No. 146] is **DENIED**.

Dated: February 29, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky